UNITED STATES DISTRICT COURT
DISTRICT OF SOUTHERN FLORIDA

ARKAD HOLDINGS, LLC,
CHRISTOPHER COLLINS,
JOHNNY GRATEROL and
KEVIN MAITAN
    Plaintiffs,

v.

Z9 CLUBHOUSE FUND GP LLC,
Z9 CAPITAL LLC and BENZION
ABOUD,
    Defendants.

Case No. 9:20cv80429

## COMPLAINT

Plaintiffs, ARKAD HOLDINGS, LLC, CHRISTOPHER COLLINS, JOHNNY GRATERAL and KEVIN MAITAN ("Plaintiffs") hereby file this action against Defendants, Z9 CLUBHOUSE FUND GP LLC ("GP") and Z9 CAPITAL LLC ("z 9 Capital") (collectively "Defendants") and alleges the following:

## INTRODUCTION

1. Plaintiffs are all investors and limited partners in z9 Clubhouse Fund I LP ("Clubhouse Fund"), which is a Delaware Limited Partnership, and all of the Plaintiffs reside in either Broward County, or Miami-Dade County.

2. Defendant, z9 Clubhouse Fund GP LLC ("GP") is the general partner of the Clubhouse Fund and is a Delaware Limited Liability Company, whose principal office is located at 4910 Communications Avenue, Suite 200, Boca Raton, Palm Beach County, Florida 33431.

3. Defendant, z9 Capital LLC ("z9 Capital") is a Delaware limited liability company and Manager of the GP, whose principal office is located at 4910 Communications Avenue, Suite 200, Boca Raton, Palm Beach County, Florida 33431.

4. Defendant, Benzion Aboud ("Aboud") is the Manager of z9 Capital and a resident of Miami-Dade County, Florida with his principal place of business is located at 4910 Communications Avenue, Suite 200, Boca Raton, Palm Beach County, Florida 33431.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant 28 U.S.C. §1331 as this case involves claims under federal statutes and under 15 U.S.C. 78aa.

6. This Court has jurisdiction over the causes of action under the Delaware securities laws under 28 U.S.C. §1367.

7. Venue is proper in this district, because the Defendants are located, resides, and/or does business in this district, and/or a substantial part of the events or omissions giving rise to the claims occurred in this district pursuant to 28 U.S.C. §1391 (b), (c).

8. Pursuant to Section 24(j) of the Clubhouse Limited Partnership Agreement, a copy of which is attached hereto as Exhibit A, the parties have agreed to the exclusive jurisdiction of the state and federal courts sitting in Palm Beach County, Florida.

## Facts

9. On or about August 10, 2015, a Confidential Private Placement Memorandum was effective regarding the prospectus of purchasing limited partnership interests in the Clubhouse Fund. Thereafter, a Confidential Amended and Restated Private Placement Memorandum was disseminated with an effective date of February 24, 2016 ("Amended PPM"), a copy of which is attached hereto as Exhibit A.

10. Contained as an exhibit in the Amended PPM was the z9 Clubhouse Fund I LP First Amended and Restated Limited Partnership Agreement ("Agreement") dated February 22, 2016 with the same effective date (Exhibit A).

11. Benzion Aboud ("Aboud") has described himself as the "brainchild" of the Clubhouse Fund in paragraph 12 of a prior complaint filed by him, and the other Defendants herein in the Circuit Court of the 15th Judicial District Palm Beach County, Case No. 502020CA001103XXXXMB ("State Case").

12. Aboud in paragraph 14 of the State Case also averred that he "is solely responsible for the overall management and administration of the operations of the Partnership."

13. The Plaintiffs were given the Amended PPM and Agreement for review.

14. After review of the terms of the Amended PPM and Agreement for review, the Plaintiffs invested in the Clubhouse Fund as follows:

Christopher Collins - $250,000.00

Arkad Holdings, LLC - $250,000

Johnny Graterol - $75,000

Kevin Maitan - $250,000

15. Upon information and belief, the Partnership funds were fully invested on or about the effective date of the Amended PPM.

16. In the section captioned "Investment Period" on page 3 of the Amended PPM, it states that the Investment Period would be no longer than four years and at the end of the four years the General Partner would be evaluating each Portfolio Company for an exit strategy and timely wind up the Partnership's business.

17. In the same section, it states that "Partnership expects to conclude a high volume of acquisitions within a short time frame in at least fifteen (15) Portfolio Companies".

18. In the section captioned "Reinvestment of Proceeds" on page 3 the Amended PPM, it states that after the Investment Period, Proceeds may only be reinvested or redeployed with the approval of the majority of the members of the Advisory Board.

19. In the section captioned "Advisory Board" of the Amended PPM and Section 19 of the Agreement, it states that there will be "an investor advisory board consisting of five (5) natural persons, each of whom is either a Limited Partner or an affiliate of a Limited Partner and is not an affiliate of the General Partner or any of the General Partner's affiliates".

20. In the section captioned "The Offering" of the Amended PPM on page 6, and page 10 of the Agreement, it states that the investments of each Limited Partner shall earn interest at a rate of 8% non-compounding preferred return calculated on an annual basis based on each Limited Partner's respective deployed capital and at a rate of 2% non-compounding preferred return calculated on an annual basis for un-deployed capital of each Limited Partner, referred therein as "Preferred Return".

21. In the section captioned "Initial Closing" of the Amended PPM on page 7, it states that the initial Limited Partners were admitted on February 11, 2016 which was the date the minimum offering amount was achieved.

22. In the section captioned "Capital Deployment; Deployed Capital" on page 8 of the Amended PPM, it appears that the Limited Partners have a right to receive distributions of Available Cash Flow from the Partnership and the calculation of the Preferred Return.

23. Pursuant to Section 13 of the Agreement, distributions are to be made of Available Cash Flow to the Partners.

24. To date, it has not been disclosed to any of the Plaintiffs what the Available Cash Flow is in any year since the inception of the Partnership, nor have any distributions been received by any of the Plaintiffs.

25. Pursuant to Section 14(e) of the Agreement there are numerous fees to be charged to the Partnership including an Asset Management Fee, Asset Acquisition Fee, Asset Disposition Fee, Asset Related Services, Management Service Agreements, some of which have not been disclosed as to the cost of said services.

26. The Plaintiffs have never received an accounting of the services as set forth in Section 14(e) of the Agreement and their respective costs as they pertain to Available Cash Flow.

27. Pursuant to Section 19 of the Agreement an Advisory Board was to be formed upon the effective date of the Partnership as also set forth above in paragraph 17, which was never done by GP.

28. Section 20 of the Agreement states the following:

> 20. <u>Reports</u>. Partnership will send to all Partners (i) within ninety (90) days after the end of each year during the Term tax information necessary for completion of its tax returns with respect to Partnership items including, without limitation, Internal Revenue Service Form K-1s; and (ii) within one hundred twenty (120) days after the end of each calendar year an unaudited financial report including a balance sheet and statements of income, changes in Partner's equity and changes in cash flows, compiled by Partnership's accountants and prepared in accordance with accounting principles generally used to prepare Partnership's federal income tax return, plus a schedule and summary description of each Investment, Subsidiary and Special Investment Vehicle as of year end and a statement for each Partner of its Capital Account. In addition, within ninety (90) days after the end of each calendar quarter Partnership will provide its Partners with unaudited financial statements compiled by Partnership's accountants.

29. The Plaintiffs have never received any of the above referenced reports other than IRS Form K-1's.

30. Pursuant to Section 22(a) of the Agreement, the books and records of the Partnership shall be open upon five (5) days prior written notice for examination of any Limited Partner or

its representative for any purpose reasonable related to Partnership's business and the Limited Partner's interest.

## COUNT I
(Breach of Contract - Investment Period)

31. Plaintiffs repeat and reallege paragraphs 1 – 29 of the complaint and incorporate said paragraphs herein.

32. The Investment Period was to be no longer than four years from the date of the first acquisition of the Clubhouse Fund.

33. At the end of four years, the GP was to begin winding down the investments of the GP.

34. In a letter to the Plaintiffs from z9 Capital dated January 13, 2020 which was couched as an update on the investment fund inviting the Plaintiffs to a meeting on January 28, 2020, there was no mention whatsoever of an intention of the Defendants to begin winding down the investments, nor has there been any communications since that time regarding the same.

35. As a result thereof, Defendants have breached this provision contained in the Amended PPM, and Plaintiffs have suffered damages therefrom.

WHEREFORE, Plaintiffs hereby request that this Honorable Court enter judgment against Defendants under Count I of this Complaint for their damages.

## COUNT II
(Breach of Contract - Investments)

36. Plaintiffs repeat and reallege paragraphs 1 – 29 of the complaint and incorporate said paragraphs herein.

37. In the same section of the Amended PPM cited in Count I, it was stated that "Partnership expects to conclude a high volume of acquisitions within a short time frame and ultimately

expects to invest in at least fifteen (15) Portfolio Companies within twenty-four (24) months after Partnership's first acquisition of an Investment."

38. In fact, the Defendants only invested in three companies during the course of the Investment Period, Internet Directory Association, Aroma.360 and Videoo, the latter company having gone out of business.

39. As a result of this breach, the investments made by Defendants were only spread out to three companies, thus greatly increasing the risk of the Plaintiffs' investment and Plaintiffs have suffered damages therefrom.

WHEREFORE, Plaintiffs hereby request that this Honorable Court enter judgment against Defendants under Count II of this Complaint for their damages.

## COUNT III
(Breach of Contract - Distributions)

40. Plaintiffs repeat and reallege paragraphs 1 – 29 of the complaint and incorporate said paragraphs herein.

41. In Section 13 of the Agreement, Distributions to the Plaintiffs were to be made out of available cash flow.

42. To date, no distributions have been made by the Defendants to the Plaintiffs, nor has it ever been disclosed to the Plaintiffs by the Defendants the cash position of the Clubhouse Fund or of any of the investments made.

43. As a result of Defendants' failure to make distributions to Plaintiffs in breach of the Agreement, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs hereby request that this Honorable Court enter judgment against Defendants under Count III of this Complaint for their damages.

## COUNT IV
(Breach of Contract – Books and Records)

44. Plaintiffs repeat and reallege paragraphs 1 – 29 of the complaint and incorporate said paragraphs herein.

45. Pursuant to Section 22(a) of the Agreement, the books and records of the Partnership shall be open upon five (5) days prior written notice for examination by any Limited Partner or its representative for any purpose reasonable related to Partnership's business and the Limited Partner's interest.

46. On December 19, 2019, Plaintiffs, through their counsel sent a demand letter to GP to have access to the books and records of the Clubhouse Fund, substantiating the reasons for said request, a copy of which is attached hereto as Exhibit B.

47. Thereafter, on January 17, 2020, Defendants' counsel sent a reply letter stating that they would not allow an inspection of the books and records of the Clubhouse Fund unless they received a letter from an individual who had a Power of Attorney of the Limited Partners or such other written instrument pursuant to Del. Code Tit. 6, §17-305.

48. Thereafter, a redacted engagement agreement between the undersigned counsel and Plaintiff Johnny Graterol was sent to Defendants' counsel, however, they have still not allowed Plaintiffs to inspect the books and records of the Partnership.

**WHEREFORE,** Defendants have breached the aforementioned Section 22(a) of the Agreement and Plaintiffs respectfully request that this Honorable Court order Defendants to allow Plaintiffs to inspect the books and records of the Partnership forthwith.

## COUNT V
(Violation of Del. Code Tit. 6, §17-305)

49. Plaintiffs repeat and reallege paragraphs 1 – 29 of the complaint and incorporate said paragraphs herein.

50. Del. Code Tit. 6, §17-305 states that "each limited partner in person or by attorney or other agent has the right, subject to such reasonable standards (including standards governing what information and documents are to be furnished, at what tine and location and at whose expense) as may be set forth in the partnership agreement….to obtain from the general partners form time to time upon reasonable demand for any purpose reasonably related to the limited partner's interest as a limited partner".

51. Such records pursuant to the statute include true and full information regarding the status of the business and financial condition of the limited partnership; a copy of the partnership's federal, state and local income tax returns for each year; a current list of the name and last known business, residence or mailing address of each partner, and other information regarding the affairs of the limited partnership as is just and reasonable.

52. Plaintiffs through counsel have made a demand to Defendants pursuant to this statute and the Agreement.

53. Defendants have refused to allow Plaintiffs to inspect the books and records of the Partnership.

**WHEREFORE,** Plaintiffs request that this Honorable Court order Defendants to allow them to inspect the books and records of the Partnership, of the GP and z9 Capital forthwith.

## COUNT VI
(Violation of Del. Code Tit. 6, §73-201 Fraud)

54. Plaintiffs repeat and reallege paragraphs 1 – 29 of the complaint and incorporate said paragraphs herein.

55. The investment interest sold to the Plaintiffs would be considered a security under Delaware law.

56. Upon information and belief, Defendants have omitted material facts from the Amended PPM and the Agreement.

57. Section 13(b) of the Agreement states that distributions to the Plaintiffs will be made out of available cash flow.

58. Defendants failed to disclose the self-dealing of Defendants, the failure to disclose the funds being directed out of the Partnership's investment in IDA to pay insiders and to deplete available cash flow to pay a return to the Plaintiffs.

59. Plaintiffs only became aware of this self-dealing and diversion of available cash flow in the fall of 2019.

60. Defendants never disclosed to Plaintiffs the actual financials of the companies that the Partnership invested in, and therefore, there was no way that Plaintiffs would have been able to discover the diversion of available cash flow.

61. The behavior of Defendants was and continues to be fraudulent and deceitful upon Plaintiffs.

62. As such, the behavior of the Defendants is a violation of Del. Code Tit. 6, §73-201.

63. Plaintiffs have suffered damages in the amount of $875,000 the amount of their initial investment, and $280,000.00 in interest payments as a result of their reliance on the representations of the Defendants as Defendants have failed to pay over to Plaintiffs their expected returns on their investments, have failed to observe proper corporate governance, and have breached their fiduciary duties to Plaintiffs.

**WHEREFORE**, Plaintiffs hereby request that this Honorable Court enter judgment against Defendants under Count VI of this Complaint for their damages in the amount of $1,155,000.00 plus attorneys' fees, costs and interest.

### COUNT VII
(Violation of 15 U.S.C. §78(b) and 17 C.F.R. §240.10b-5)

64. Plaintiffs repeat and reallege paragraphs 1 – 29 of the complaint and incorporate said paragraphs herein.

65. The Plaintiffs were sold what is defined as a security in 15 U.S.C. §78c(a)(10) by the Defendants.

66. The Defendants disseminated the information about the Partnership including the Amended PPM and Agreement through interstate commerce, including, but not limited through electronic transmission via the internet.

67. Numerous material misrepresentations and omissions were contained in the Amended PPM and Agreement including the requirement to form an Advisory Board, pay interest earned, distribute returns from available cash flow, providing detailed financial reports, and winding down the investments.

68. Defendants did not form an Advisory Board, did not pay interest earned on the investments of Plaintiffs, did not distribute available cash flow because apparently it did not exist, did not disclose the amount of fees to insiders, did not provide detailed financial reports, and did not commence the winding down process of investments at the time called for.

69. The conduct of the Defendants cannot be described in any other way but intentional and willful, further demonstrated by Defendants' failure to provide access to books and records of the Partnership and its investments which is a furtherance of an intentional coverup.

70. Plaintiffs relied upon the representations set forth in the Amended PPM and Agreement by the Defendants when evaluating their investment in the Partnership.

71. Plaintiffs have suffered damages in the amount of $875,000 the amount of their initial investment, and $280,000.00 in interest payments as a result of their reliance on the representations of the Defendants as Defendants have failed to pay over to Plaintiffs their expected returns on their investments, have failed to observe proper corporate governance, and have breached their fiduciary duties to Plaintiffs.

**WHEREFORE**, Plaintiffs hereby request that this Honorable Court enter judgment against Defendants under Count VI of this Complaint for their damages in the amount of $1,155,000.00 plus attorneys' fees, costs and interest.

Respectfully submitted,
Arkad Holdings, LLC, Christopher Collins,
Johnny Graterol,
And Kevin Maitan,
Plaintiffs
By their attorney,

Dated:  March 16, 2020

    /s/ Moss M. Sidell
Moss M. Sidell
Florida Bar No. 126102
Sidell Law Offices, P.A.
6501 Congress Avenue, Suite 240
Boca Raton, FL 33487
Telephone:  (561) 674-9050
Telecopier:  (617) 275-8994
E:mail:  msidell@sidelllaw.com